IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SOLLY M. THOMPKINS,

                    Petitioner,

                                        CIVIL ACTION
        vs.                             No. 10-3016-WEB

DAVID R. McKUNE, et al.,


                    Respondents.


MEMORANDUM AND ORDER


        This matter is a petition for habeas corpus filed pursuant

to 28 U.S.C. § 2254.  Petitioner, proceeding pro se, challenges

his convictions in the District Court of Wyandotte County,

Kansas, of first degree murder in violation of K.S.A. 21-3401

and burglary in violation of K.S.A. 21-3715.

**Background**

*1. Procedural history*

        Petitioner was convicted of first degree murder and

burglary in June 1995.  On direct appeal, the Kansas Supreme

Court affirmed the burglary conviction but reversed the

conviction of murder and remanded that charge for a new trial.

        On June 19, 1998, petitioner was again convicted of first

degree murder.  He was sentenced on August 27, 1998, to a term

of life without the possibility of parole for 25 years.  The

Kansas Supreme Court affirmed the conviction on April 27, 2001.

*State v. Thompkins*, 21 P.3d 997 (Kan. 2001).

On May 10, 2002, petitioner filed a post-conviction action

pursuant to K.S.A. 60-1507.  The state district court denied

relief on March 31, 2006, but failed to rule on all the issues.

Petitioner filed a motion requesting a ruling on the remaining

issues on April 12, 2006, and a second motion on June 5, 2007.

On September 21, 2007, petitioner filed a motion for writ of

mandamus.  Thereafter, the district court denied his remaining

claims.

On April 2009, the Kansas Court of Appeals affirmed the

denial of relief.  The Kansas Supreme Court denied review on

January 7, 2010.

*2. Factual background*

The Kansas Supreme Court summarized the facts as follows[1]:

> Thompkins and Frances had a tumultuous and mutually
> physically aggressive marriage.  On two occasions,
> Frances had obtained restraining orders against
> Thompkins.  Both orders were subsequently dismissed at
> Frances' request.
>
> In August 1994, the couple again separated.  Frances

---

[1]
A federal court reviewing an application for habeas corpus
relief filed by a person in state custody presumes the
factual determinations of a state court to be correct.  28
U.S.C. §2254(e)(1).

and her daughter moved into Frances' mother's home. After a violent confrontation with Thompkins on August 29, 1994, Frances applied to the district court for third temporary protection from abuse order. Thompkins was served with a copy of the order while in Johnson County Jail on an unrelated charge. The final restraining order, granted on October 14, 1994, ordered Thompkins not to contact Frances for 1 year.

On October 20, 1994, Frances contacted an attorney to begin divorce proceedings. There is no evidence that Thompkins was aware that Frances had filed for divorce. Some letters Thompkins wrote from jail were admitted into evidence which indicated that Thompkins was aware that Frances did not want anything to do with Thompkins again. Thompkins was released from the county jail on October 21, 1994.

On October 22, 1994, around 11:30 a.m., Frances was at Donnelly College when Thompkins arrived at the school. Thompkins approached Frances and told her that he wanted to talk with her. They went outside to a parking lot. The discussion became an argument when Frances told Thompkins she did not want anything to do with him, and she asked him to leave her alone. The two drove away from the school in Frances' car.

A short time later, Officer Rodney Green observed Frances' car parked on the side of the road. Green drove by the car. He did not notice anything unusual. When Officer Green was about 30 to 40 feet past the parked car, the car horn honked. Green put his car in reverse and returned to Frances' car. Thompkins exited the car from the passenger's side and Frances got out on the driver's side. Green noticed that Frances was injured which probably resulted from a beating. Green pursued Thompkins.

Frances had been stabbed three times – two nonfatal wounds and one wound that cut her pulmonary artery. She had also sustained cut injuries on the palm of her right hand, some facial and head injuries, abrasions to her thighs, and some false fingernails were torn off. Frances died at the scene from blood loss.

To escape the pursuing officer, Thompkins broke into the home of an acquaintance. Officer Green and backup officers arrested him in the home. Thompkins was taken to the police station where the officers read him his *Miranda* rights. After initially refusing to provide biographical information to the officers, Thompkins made a number of statements, including that Frances was a "hypocrite of God" and that he did what he had to do to keep Frances. Thompkins stated that he had time to repent but that Frances did not and he had no reason to lie because Frances was dead. Thompkins concluded that he was the victim and Frances was not "all such a great person." *State v. Thompkins*, 21 P.23 997, 1000 (Kan. 2001).

Additional facts are incorporated in the discussion of petitioner's claims.


## Discussion

**Grounds for relief**

Petitioner seeks review on four grounds, namely:

1. His murder conviction violates double jeopardy.

2. The introduction of testimony concerning his silence in response to routine booking questions violated the Fifth and Fourteenth Amendments.

3. He received ineffective assistance of counsel.

4. He was denied a fair trial by erroneous jury instructions.

Petitioner presented the first, third, and fourth claims in his post-conviction action and presented the second claim on direct appeal.

**Standard of review**

This matter is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Under the AEDPA, where a claim has been adjudicated on its merits in a state court, a federal court may grant habeas relief only if the petitioner establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1),(2).

A decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in its case law or "if the state confronts a set of facts that are materially indistinguishable from" a decision of the Supreme Court but reaches a different result. *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000).  Likewise, a state court unreasonably applies established federal law where it "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new

context where it should apply." *Williams,* 529 U.S. at 407.

Under the AEDPA, determinations of fact made in the state courts are presumed to be correct and may be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

The Supreme Court has distinguished "an *unreasoanble* application of federal law ... from an *incorrect* application of federal law" and has stated that a federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410-11. Thus, the AEDPA standard of review creates a higher threshold for obtaining relief than *de novo* review. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold").

**Analysis**

**1. Double jeopardy claim**

Petitioner originally was charged with premeditated first degree murder or, in the alternative, felony murder; aggravated robbery, and burglary. At the close of the preliminary hearing, however, the state district court refused to bind over the petitioner on premeditated first degree murder. The prosecution

6

then filed an amended information, charging premeditated murder or felony murder, aggravated robbery, and burglary.

At a subsequent pretrial hearing, a different district judge denied leave to proceed on the amended information but advised the parties he would allow any evidence of premeditated murder or felony murder and then would instruct the jury in accordance with the evidence offered. At trial, after the parties rested, the trial judge instructed the jury on both premeditated first degree murder and felony murder. The jury returned guilty verdicts on the charges of premeditated first degree murder and burglary but acquitted petitioner of robbery, the underlying felony supporting the charge of felony murder.

On appeal, the Kansas Supreme Court reversed the conviction for premeditated first degree murder because the charge had been dismissed at the preliminary examination and, as a result, petitioner had not been arraigned on that charge. The matter was remanded for a new trial. On remand, petitioner was convicted of premeditated first degree murder.

On appeal, petitioner argued, in part, that his retrial on first degree murder violated double jeopardy because he had been acquitted of felony murder.

The Kansas Supreme Court ruled the second conviction did not violate double jeopardy principles, stating:

> In order to implement and define the constitutional
> guarantees against double jeopardy, the Kansas Legis-
> lature enacted K.S.A. 2000 Supp. 21-3107 and K.S.A.
> 21-3108. K.S.A. 2000 Supp. 21-3107 defines the right
> of the State to charge more than one offense based on
> the same act and states that a defendant may be
> convicted of either the crime charged or an included
> offense not specifically charged. It formulates the
> limitations upon unfair multiplicity of convictions
> and prosecutions.... Because Thompkins was found
> guilty of premeditated murder in the first trial and
> the conviction was reversed and remanded for a new
> trial by this court, K.S.A. 21-3108(4)(c)[2] is control-
> ling. Thompkins' rights under K.S.A. 21-3108(2)(a)
> and the Double Jeopardy Clauses of the state and
> federal Constitutions have not been violated. *State
> v. Thompkins*, 21 P.3d 997, 1006-07 (Kan. 2001).

The Double Jeopardy Clause of the Fifth Amendment encompasses three distinct constitutional protections, namely, "protect[ion] against a second prosecution for the same offense after acquittal," "protect[ion] against a second prosecution for the same offense after conviction," and "protect[ion] against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969).

The Double Jeopardy Clause bars a subsequent prosecution only when there was previously a judgment of acquittal on the charge. *See United States v. Scott,* 437 U.S. 82, 91-92 (1978).

---

[2]

K.S.A. 21-3108 provides: (4) A prosecution is not barred under this section: (c) If subsequent proceedings resulted in the invalidation, setting aside, reversal or vacating of the conviction, unless the defendant was adjudged not guilty.

Thus, "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge," while, in contrast, "[a] judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict" operates as a bar to future prosecution on the same charge. *United States v. Scott*, 437 U.S. 82, 91-92 (1978). *See also United States v. DiFrancesco*, 449 U.S. 117, 132-33 (1980) ("It is acquittal that prevents retrial even if legal error was committed at the trial." (citations and quotations omitted)).

Here, petitioner was acquitted of robbery in the first trial, a felony charge which supported the charge of felony murder. He was not retried on either robbery or a theory of felony murder. However, petitioner was convicted of premeditated first degree murder in the first trial, and that conviction was overturned on appeal due to the fact that petitioner had not been arraigned on that charge. That scenario did not prevent retrial on the charge of premeditated first degree murder, and petitioner's conviction of that crime in the second trial did not violate Double Jeopardy principles.

## 2. Testimony on post-*Miranda* silence

Petitioner next asserts his Fifth Amendment right to

silence was violated by testimony at his trial.

At trial, the prosecutor asked the arresting officer if he read petitioner the *Miranda* warnings.  The officer testified that petitioner was read his rights with other officers present.  The prosecutor then asked if petitioner made any statements to the officers while they were preparing paperwork.  In response, the officer stated:

> "Yes ma'am.  The suspect began talking.  At first he didn't want to say anything, we were asking him what his name was, his address, phone number, pertinent information for our reports, he didn't want – he didn't tell us anything.  And then we had found –" *State v. Thompkins*, 21 P.3d 997, 1003 (Kan. 2001).

At this point, defense counsel interrupted with an objection, and no other testimony was given concerning post-*Miranda* conduct.  The defense moved for a mistrial, and the trial court, after hearing argument outside the presence of the jury, denied the motion for a mistrial.

In *Doyle v. Ohio*, 426 U.S. 610 (1976), the United States Supreme Court held that a prosecutor denies a criminal defendant due process by making improper reference to the defendant's post-*Miranda* silence.  *Doyle*, 426 U.S. at 611, 619.

The Kansas Supreme Court concluded the reference to petitioner's silence during questioning about his identity did not violate *Doyle*.  The court noted a state case law precedent

that background information from a defendant used to complete a
personal history sheet does not constitute an interrogation for
purposes of *Miranda*.  *State v. Thompkins*, 21 P.3d at 1004-05
(discussing *State v. Garcia*, 664 P.2d 1343, 1353-56 (Kan.
1983)).

The Court concluded:

> Here, Thompkins was read his *Miranda* rights and then,
> in response to routine biographical questions, made
> unsolicited incriminating statements.  Whether the
> questions were routine biographical or investigatory,
> the testimony regarding Thompkins' silence coming
> immediately after testimony that Thompkins had been
> advised of his right to remain silent could not be
> construed by the jury as an indication of guilt.
> *Thompkins*, *id*.

In cases of improper comment upon a defendant's silence,
"the question is 'whether the language used [by the prosecu-
tor] was manifestly intended or was of such character that the
jury would naturally and necessarily take it to be a comment
on the defendant's right to remain silent.'"  *Battenfield v.
Gibson,* 236 F.3d 1215, 1225 (10th Cir. 2001)(quoting *Pickens
v. Gibson,* 206 F.3d 988, 998 (10th Cir. 2000)).  Such error
is examined under a harmless error analysis.  *See Brecht v.
Abrahamson*, 507 U.S. 619, 628-29 (1993); *Hamilton v. Mullin*,
436 F.3d, 1181, 1187 (10th Cir. 2006).

The court has considered the record and concludes the

question by the prosecutor could not reasonably be described as a clear attempt to comment upon petitioner's silence. Nor is there any plausible showing here of prejudice, as the testimony elicited described only petitioner's failure to respond to initial questions concerning his identity. The prosecutor's conduct falls short of the standard in *Battenfield*, and the court finds no basis for habeas relief is presented.

## 3. Ineffective assistance of counsel

Petitioner claims he was denied the effective assistance of counsel at trial. He contends his attorney presented a guilt-based defense without his permission, that counsel failed to call and obtain witnesses needed to present a viable defense, that counsel failed to move for a mistrial and for a new trial, and that counsel committed cumulative error that denied him a fair trial.

Petitioner presented the claim of ineffective assistance to the trial court in a motion filed pursuant to K.S.A. 60-1507. The trial court conducted evidentiary hearings and thereafter denied the motion. Petitioner then filed a motion for additional findings of fact and conclusions of law, and the court issued a second memorandum decision, addressing additional claims but again denying relief.

To prevail on his claim of ineffective assistance, petitioner must establish that the state courts unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* standard, petitioner must show that his counsel's performance was both deficient and prejudicial. *Strickland,* 466 U.S. at 687; *Osborn v. Shillinger,* 997 F.2d 1324, 1328 (10th Cir. 1993).

There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland*, 466 U.S. at 688. In making this determination, a court examines "[a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. The review is highly deferential. *Id.* at 689. Finally, to establish prejudice, petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**a. The theory of defense**

The Kansas Court of Appeals rejected petitioner's claim challenging the trial strategy of voluntary manslaughter used by defense counsel. The court stated:

During the K.S.A. 60-1507 hearing, Thompkins
testified that he disagreed with [defense counsel]
Sasche's trial theory because Thompkins did not
believe that he acted intentionally.

Sasche testified that he thought the best trial
strategy was to argue that Thompkins was guilty of
voluntary manslaughter, not first-degree murder,
because Thompkins had already served most of the
time required for a voluntary manslaughter
conviction.  Sasche also testified that he did not
recall that Thompkins disagreed with his trial
strategy, and that he believed Thompkins understood
Sasche's reason for believing this was the best
strategy.

The district court found that Sasche's testimony
that he discussed the trial strategy with Thompkins
was more credible than Thompkins' testimony that he
did not agree to the defense.  The district court
noted that Thompkins had made no objection at trial
to Sasche's trial strategy and that Thompkins had
filed a pro se motion for a new trial without rais-
ing this issue.  Accordingly, the district court
found that Sasche did not violate Thompkins' right
to present his theory of defense.  The district
court concluded that Sasche's performance in pre-
senting a guilt-based defense was not deficient.
*Thompkins v. State*, 203 P.3d 1281, 2009 WL 929100,
*4 (Kan. App. 2009).

The Kansas Court of Appeals found that on appeal,

Thompkins essentially challenged only the findings of fact

made by the district court.  The appellate court found those

determinations were supported by substantial, competent

evidence that supported the conclusions reached.

In performing this analysis, the Kansas Court of Appeals

applied the correct legal standard, and this court finds no

error that would warrant habeas corpus relief.

**b. The failure to call witnesses.**

Petitioner claims his trial counsel provided ineffective assistance by failing to subpoena two witnesses. The first of these witnesses was an unnamed security guard at Donnelly College who allegedly saw petitioner during the two hours before the murder. Petitioner contended this person could testify concerning petitioner's state of mind and could testify that petitioner was not armed.

Petitioner also testified that a second witness, Gary Hill, would testify that an officer committed perjury during the trial and could testify concerning petitioner's credibility. At the 60-1507 hearing, petitioner did not specify how the officer committed perjury, nor did he know how to locate Hill, except that he might be located through the members of San Angelo's Missionary Baptist Church.

Defense counsel testified at the 60-1507 hearing that he did not remember whether petitioner asked him to secure these witnesses.

The district court denied relief, finding that petitioner's testimony lacked credibility and that he had failed to show either how the witnesses would have testified or whether their testimony would have been favorable.

The Kansas Court of Appeals upheld that ruling, concluding the district court properly determined that petitioner had not established the relevance of the testimony the witnesses might have offered and that the factual findings of the district court were supported by the record.

The Kansas Court of Appeals cited the correct legal standard, and this court finds no error in the application of that standard to the record. Petitioner made only a bare assertion concerning the two witnesses and offered no plausible theory for how any testimony would have been favorable to him.

**3. Claims of failure to seek mistrial or a new trial and of cumulative error.**

Respondents assert that petitioner's claims concerning counsel's failure to move for a mistrial and for a new trial and alleging cumulative error are barred by procedural default due to his failure to present them in the state courts.

In order to obtain federal habeas corpus relief, a state prisoner must exhaust state court remedies. *See Bland v. Sirmons,* 459 F.3d 999, 1011 (10th Cir. 2006). Where a petitioner has failed to exhaust state court remedies and no longer could raise the unexhausted claims in the state courts, the claims "are defaulted in state court on adequate and

independent state procedural grounds ... unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Fairchild v. Workman,* 579 F.3d 1134, 1141 (10th Cir. 2009) (quoting *Smith v. Workman,* 550 F .3d 1258, 1274 (10th Cir. 2008), *cert. denied,* 505 U.S. 1238 (2009))(internal punctuation omitted).

To overcome such a procedural default, a prisoner must establish cause by "show[ing] that 'some objective factor external to the defense' impeded his compliance with [state] procedural rules." *Dulin v. Cook,* 957 F.2d 758, 760 (10th Cir.1992)(citations omitted). In addition, to establish prejudice, "'[t]he habeas petitioner must show not merely that ... errors ... created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage.'" *Butler v. Kansas,* 2002 WL 31888316, at *3 (10th Cir. 2002)(unpublished)(quoting *Murray v. Carrier,* 477 U.S. 478, 494 (1986)(emphasis in original)).

Finally, the fundamental miscarriage of justice exception provides "a narrow exception to the cause requirement where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." *Dretke v. Haley,* 541 U.S. 386, 393 (2004)(internal punctuation omitted). Petitioner bears a heavy burden to show

17

that the failure to consider his defaulted claims will result in a fundamental miscarriage of justice.   In order to meet this burden,

> [T]he petitioner must supplement his habeas claim with a colorable showing of factual innocence. Such a showing does not in itself entitle the petitioner to relief but instead serves as a "'gateway'" that then entitles the petitioner to consideration of the merits of his claims. In this context, factual innocence means that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Demarest v. Price*, 130 F.3d 922, 941-942 (10th Cir.1997) (internal quotations omitted).

Respondents contend petitioner cannot make the necessary showing of cause and prejudice to overcome his procedural default.   They argue petitioner has not established that any external factor prevented him from presenting the claims in the state courts, nor has he shown prejudice or a miscarriage of justice.

Petitioner's traverse addresses the respondents' assertion of default by claiming he was prevented from pursuing this claim by ineffective assistance of counsel. (Doc. 19, p. 35.)

The United States Supreme Court has determined that ineffective assistance of counsel may establish "cause" sufficient to excuse procedural default, but only if the "assistance [was] so ineffective as to violate the Federal

Constitution." *Gaines v. Workman,* 326 Fed.Appx. 449, 452 (10th Cir.2009)(unpublished), *citing Edwards v. Carpenter,* 529 U.S. 446, 451 (2000).

The court's review of the record, however, does not support a conclusion that petitioner can overcome the default. The failure to file post-trial motions, viewed in the context of the trial record, does not suggest that petitioner was denied the adequate assistance of counsel, nor has petitioner made any persuasive argument that such motions might have been successful.

## 4. Erroneous jury instructions

Petitioner presented the claim that his trial was unfair due to erroneous jury instructions[3] in his petition for post-conviction relief filed pursuant to K.S.A. 60-1507. On his appeal from that matter, the Kansas Court of Appeals held that the claim concerned trial error which must be presented on direct appeal and noted that there was no objection at trial. Because petitioner did not raise the claim in his direct appeal, the Kansas Court of Appeals determined the issue was defaulted.

---

[3] Petitioner asserted that the trial court erred in giving an instruction that improperly combined PIK instructions on the presumption of intent and general intent. (Doc. 19, Ex. B, p. 3.)

As discussed, this court may review a defaulted claim that is barred on adequate and independent state procedural grounds only if petitioner can demonstrate cause for the default and prejudice, or if he can show that a fundamental miscarriage of justice will occur if the claim is not reviewed.

In his traverse, petitioner relies upon a claim of ineffective assistance of counsel as an exceptional circumstance that warrants review of this claim despite the failure to present it on direct appeal. He argues the jury instruction issue should be reviewed because the error was so fundamentally unfair that it denied him a fair trial. He also asserts that the Kansas Court of Appeals did not allow him an opportunity to assert a claim of exceptional circumstances. (Doc. 19, pp. 37-38.)

Again, in order to establish "cause" sufficient to excuse procedural default, petitioner must demonstrate that the legal representation he received was constitutionally inadequate. Because no court has made such a finding, the record does not provide any basis for additional review of petitioner's defaulted claim concerning jury instructions.

## Conclusion

For the reasons set forth, the court concludes this petition for habeas corpus must be denied. Petitioner has not

met the heavy burden of showing either that the state courts erroneously determined that he received a fair trial or that his defaulted claims should be given additional review in habeas corpus.

IT IS, THEREFORE, BY THE COURT ORDERED this matter is dismissed and all relief is denied.

Copies of this Memorandum and Order shall be transmitted to the parties.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas, this 20th day of December, 2010.


S/ Wesley E. Brown
WESLEY E. BROWN
United States Senior District Judge